IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Keyon Bowman, #315362, | ) | C/A No. 0:08-2517-PMD-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Jon Ozmint, | ) | |
| South Carolina Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This civil rights matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil

Rule 73.02(B)(2) DSC on cross motions for summary judgment. (Docket Entries 26 & 59.)  The

plaintiff, Keyon Bowman ("Bowman"), a self-represented state prisoner, filed this action pursuant

to 42 U.S.C. § 1983 alleging that the defendants violated the Eighth Amendment to the United States

Constitution by failing to protect him from being stabbed in the eye by another inmate and by

subjecting him to cruel and unusual punishment through deliberate indifference to his medical needs.

Additionally, Bowman contends that the defendants violated his due process rights.

The defendants have moved for summary judgment.  (Docket Entry 26.)  By order of this

court filed October 21, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

Bowman was advised of the summary judgment and dismissal procedures and the possible

consequences if he failed to respond adequately.  (Docket Entry 27.)  Following an order granting

Bowman's motion for an extension of time (Docket Entry 32) and an order giving Bowman an

additional fifteen days to respond to the court's Roseboro order (Docket Entry 37), Bowman filed

a response to the defendants' motion for summary judgment (Docket Entry 39).  On June 17, 2009,

Bowman filed a cross motion for summary judgment. (Docket Entry 59.) The defendants filed a response in opposition (Docket Entry 60), to which Bowman filed a reply (Docket Entry 62). These motions are now before the court for a Report and Recommendation.

## BACKGROUND

The following facts appear to be undisputed. The incident that initiated the instant complaint occurred on May 10, 2006, while Bowman was housed at Kirkland Correction Institution ("Kirkland"). While Bowman and other inmates were being escorted to the cafeteria, Bowman suffered an injury to his right eye and top of his head. (Latta Aff., Docket Entry 26-6 at 1.) Bowman alleges that he was assaulted, but he was not able to identify the assailant. (Id.) Bowman was escorted to the Kirkland medical annex where he was seen and treated by two nurses. (Id.; Medical Summary & Records, Docket Entry 26-3 at 3-11, 19.) Bowman was then transported via EMS to Palmetto Richland Memorial Hospital where he was released after receiving stitches to his right eyelid and a prescription for ibuprofen. (Medical Summary & Records, Docket Entry 26-3 at 10, 20.) He was examined the following day by a nurse at the Kirkland medical annex. (Medical Summary, Docket Entry 26-3 at 8-10.) On July 3, 2006, Bowman was transferred to Lee Correctional Institution ("Lee"). (Kenealy Aff., Docket Entry 26-5 at 1, 3.) Bowman went to the Lee medical clinic on August 8, 2006 and again on August 29, 2006, complaining of blurred vision, light sensitivity, and headaches. (Medical Summary, Docket Entry 26-3 at 7-8.) Bowman was prescribed a pain reliever and, after the second visit, was referred to Dr. John Pate, a certified family practitioner and contract physician with the South Carolina Department of Corrections. (Medical Summary, Docket Entry 26-3 at 7; Pate Aff. at ¶ 1, Docket Entry 26-4.) On September 7, 2006, Bowman was examined by Dr. Pate, who performed a non-dilated eye exam and a vision test. (Pate

Aff. at ¶ 3, Docket Entry 26-4.)  Dr. Pate noted a possible fundal scar in Bowman's right eye, a slight droop to the right eyelid, and a mild decrease in vision to the right eye.  (Id. at ¶¶ 3-4.)  Dr. Pate referred Bowman to an ophthalmologist.  (Id. at ¶ 4.)  Dr. Pate attests that Bowman was examined by an ophthalmologist on September 27, 2006, who noted that "the sclera and the anterior chamber were both clear" and that the examination was normal.  (Id. at ¶ 4; Medical Records, Docket Entry 26-3 at 15.)  Dr. Pate further attests that the ophthalmologist did not order follow-up treatment. (Pate Aff. at ¶ 4, Docket Entry 26-4.)  Bowman complained again of headaches, dizziness, and nausea to the Lee medical clinic on June 19, 2007, and he was scheduled to be seen by an optometrist. (Medical Summary, Docket Entry 26-3 at 5-6.)  An optometrist examined Bowman on October 2, 2007 and noted that Bowman's eyesight was "WNL," or within normal limits.  (Medical Records, Docket Entry 26-3 at 13; Pate Aff. ¶ 5, Docket Entry 26-4 at 2.)  Although according to his medical summary Bowman has continued to complain of vision problems (Medical Summary, Docket Entry 26-3 at 3-4), the defendants contend that there is no medical evidence to support his complaints. (Pate Aff., ¶ 6, Docket Entry 26-4 at 2.)

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.      Defendants' Immunity from Suit

As an initial matter, the defendants are immune from suit under the Eleventh Amendment to the United States Constitution. The South Carolina Department of Corrections ("SCDC"), as an agency and arm of the State of South Carolina, and Defendant Ozmint, in his official capacity as the Director of SCDC, are both protected by the doctrine of sovereign immunity and are not "persons" under § 1983. The Supreme Court has held that state agencies, divisions, departments, and officials

are not "persons" under § 1983 and are entitled to Eleventh Amendment immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e).

To the extent that Defendant Ozmint is sued in his individual capacity, he is similarly immune from suit under the doctrine of qualified immunity. The United States Supreme Court has held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Applying Harlow, the United States Court of Appeals for the Fourth Circuit has held that

> [r]uling on a defense of qualified immunity [] requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right.

Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). If the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998). As discussed below, Bowman has failed to demonstrate a constitutional violation. Accordingly, Defendant Ozmint is entitled to qualified immunity.

## C.    Supervisory Liability

Moreover, with respect to Defendant Ozmint, there is no evidence, nor even any allegation, that this defendant had anything to do with the events surrounding Bowman's alleged injuries.

Rather, the record shows that Ozmint has solely been named as a defendant because, as Director of SCDC, he had overall supervisory authority for SCDC. (See Docket Entry 39) (stating that Ozmint is "solely responsible for the training techniques for the officer's [sic] within the Dept." and he must "be held, in part[,] responsible for the transgressions against plaintiff").

The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 & nn.1-2 (4th Cir. 1977). Therefore, unless Bowman has set forth allegations of specific wrongdoing on the part of the Defendant Ozmint, Ozmint may not be held liable for the acts of others absent an official policy or custom for which he was responsible and which resulted in illegal action. See generally Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F. Supp. 426, 428-29 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Stubb v. Hunter, 806 F. Supp. 81, 82-83 (D.S.C. 1992); Joyner v. Abbott Laboratories, 674 F. Supp. 185, 191 (E.D.N.C. 1987); see also Slakan v. Porter, 737 F.2d 368, 375-76 (4th Cir. 1984). Bowman has made no claim of any official policy or custom of Defendant Ozmint which resulted in the allegedly unconstitutional conduct at issue here.

## D. Failure to Protect

To establish a "failure to protect" claim under the Eighth Amendment, Bowman must demonstrate (1) a serious injury and (2) a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong,[1] an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294,

---

[1]The seriousness of Bowman's injury does not appear to be in dispute.

302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); Washington v. La Porte County Sheriff's Dep't, 306 F.3d 515 (7th Cir. 2002) (same). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Bowman states that, as he was escorted to the cafeteria, he was stabbed from behind over his right eye and in the top of his head in the presence of the escorting officers. (Compl. ¶¶ 5, 12, Docket Entry 1-2 at 3-4; Docket Entry 39 at 1.) Bowman does not identify the escorting officers or present any evidence to show that the defendants named in his Complaint were deliberately indifferent to his health or safety or had actual knowledge of a substantial risk of harm to Bowman. In fact, upon realizing Bowman was injured, additional officers were notified by radio and Bowman was escorted to the medical annex and subsequently transferred via EMS to the hospital. (Latta Aff. ¶¶ 3-4, Docket entry 26-6.)

Therefore, viewed in the light most favorable to Bowman, the record shows no evidence that the defendants had knowledge of any substantial risk of harm to Bowman. Accordingly, Bowman's claims that the defendants violated his Eighth Amendment rights fail as a matter of law.

E.      **Eighth Amendment Claim as to Medical Treatment**

After the incident Bowman states that he was treated at Richland Memorial Hospital. (Compl. ¶ 6, Docket Entry 1-2 at 3.) However, he asserts that he was ordered and scheduled for a follow-up visit for his injuries, which never occurred. (Id. ¶ 8.) Bowman further contends that he was denied access to qualified health care staff, resulting in "dizziness, blurred vision, migraine

headaches, sensitivity to light, nauseousness, and pure anguish, stress and pain and suffering from the wound to his right eye." (Id. ¶¶ 9, 10, Docket Entry 1-2 at 4.)

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eight Amendment. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); Washington v. La Porte County Sheriff's Dep't, 306 F.3d 515 (7th Cir. 2002) (same). The government is required to provide medical care for incarcerated individuals. Estelle, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. 97.

As described above, Bowman was seen and treated by various medical staff on numerous occasions. Furthermore, immediately following the May 10, 2006 incident, Bowman was sent to the hospital for treatment. Dr. Pate attests that the ophthalmologist that saw Bowman on September 27, 2006, noted that "the sclera and the anterior chamber were both clear" and that the examination was normal. (Pate Aff. ¶ 4, Docket Entry 26-4 at 2; Medical Records, Docket Entry 26-3 at 15.) Dr. Pate further attests that the ophthalmologist did not order follow-up treatment. (Id.) Following complaints on June 19, 2007, Bowman was scheduled to be seen by an optometrist, who upon examination on October 2, 2007 noted that Bowman's eyesight was "WNL," or within normal limits.

(Medical Records, Docket Entry 26-3 at 5-6, 13; Pate Aff. ¶ 5, Docket Entry 26-4 at 2.) Bowman's dissatisfaction with the treatment he received is insufficient, standing alone, to support an Eighth Amendment claim of deliberate indifference. Viewed in the light most favorable to Bowman, there is no evidence that Bowman's medical care was grossly inadequate. See Miltier, 896 F.2d 848. Accordingly, there is no evidence to support this claim.

**F.      Due Process Claim**

To the extent that Bowman alleges that his due process rights were violated through injuries sustained in an attack by another inmate, this claim is without merit. To prevail on a procedural or substantive due process claim, a plaintiff must first demonstrate that he was deprived of a protected liberty or property interest. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). The United States Supreme Court has "conclude[d] that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986) (emphasis in original). Further, as Bowman is a state prisoner and not a pre-trial detainee, his allegations of deliberate indifference and failure to protect implicate the Eighth Amendment's proscription against cruel and unusual punishment—which is discussed above— not the Fourteenth Amendment's requirement of due process. See Bell v. Wolfish, 441 U.S. 520, 535-38 (1979) (noting that a *sentenced inmate* may not be subjected to cruel and unusual punishment under the Eighth Amendment and holding that claims concerning confinement conditions upon a *pre-trial detainee* are to be evaluated under the Due Process Clause). For the reasons discussed above, Bowman is not entitled to relief on this claim.

PJG

**RECOMMENDATION**

For all of the foregoing reasons, the court recommends that the plaintiff's motion for summary judgment (Docket Entry 59) be denied and that the defendants' motion for summary judgment (Docket Entry 26) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 29, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).